IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 06–cv–01233–EWN

In re:

MS55, INC., f/k/a MSHOW.COM, INC.,

      Debtor.

JEFFREY HILL, TRUSTEE,

      Plaintiff,

v.

GIBSON DUNN & CRUTCHER, LLP,
a California registered limited liability
partnership,

      Defendant.

_____

## ORDER AND MEMORANDUM OF DECISION
_____

      This is an appeal from an order of the bankruptcy court dismissing the claims of Appellant

Jeffrey Hill, Trustee, ("Trustee") against Appellee Gibson, Dunn & Crutcher, LLP ("GDC")

based on the doctrine of *in pari delicto*. Jurisdiction is premised upon 28 U.S.C. § 158 (2006).

## FACTS

*1.    Factual Background*

This appeal is taken from an adversary proceeding filed by Trustee in his capacity as Chapter 7 trustee for the bankruptcy estate of Debtor MSHOW.COM (n/k/a Ms55, Inc.), alleging tort violations by GDC, a law firm that served as outside counsel to Debtor in connection with several pre-petition and ostensibly some post-petition financial transactions that are now at issue. The following relevant factual findings of the bankruptcy court are undisputed on appeal. *See In re Winslow*, 186 B.R. 716, 721 (D. Colo. 1995) (taking judicial notice of the bankruptcy court's records and files).

> [Trustee's] Amended Complaint centers on [GDC's] actions in connection with various financing transactions involving [Debtor] and certain insiders of [Debtor] including Akami Technologies, Inc. ("Akami"), Blue Chip Capital Fund II, Ltd. ("Blue Chip"), and Howard Leach or entities under his control ("Leach"). . . .
>
> [Debtor] was formed in 1998 by Tom Lopez, Frank Johnson and Robert Ogdon. Its primary business related to the development of technology which allowed images over the internet to be coordinated with voice over the telephone. . . .
>
> [Debtor] was dealt a severe blow by the downturn in the dot-com industry which occurred in March, 2000. After that date, [Debtor] began experiencing major difficulties in finding investors willing to provide cash. As a result, in mid to late 2000, [Debtor] was engaged in the vigorous pursuit of venture capital firms, companies involved in similar business, and other potential investors and/or business partners. One of the parties contacted by [Debtor] was Akamai, and in December, 2000, [Debtor] and Akamai entered into a series of agreements. Akamai had, at that time, developed a competing technology for web meetings known as Netpodium. The Akamai agreements (sometimes referred to hereinafter as the "Akamai Transaction") provided that Akamai would invest $5 million in [Debtor] if [Debtor] would purchase Akamai's customer list and non-exclusive license to use the Netpodium technology. [Debtor] agreed to pay Akamai $3.51 million by January 15, 2001 for the Netpodium license.

As part of the structuring of the Akamai Transaction in December, 2000, Akamai requested that Blue Chip and Leach, who at the time were major investors and shareholders in [Debtor], guarantee [Debtor's] $3.15 million obligation to Akamai. The Akamai Transaction also provided that if [Debtor] did not make its payment to Akamai in January, 2001, Blue Chip and Leach could then delay enforcement of their guarantees in favor of Akamai by posting letters of credit for the benefit of Akamai in the amount of $1.575 million each.  Blue Chip and Leach agreed to guarantee [Debtor's] payment to Akamai and, when [Debtor] failed to pay Akamai in January, 2001, agreed to post letters of credit.

. . . .

In February, 2001, [Debtor] had not paid Akamai the $3.15 million, and [Debtor] was itself then short of operating funds.  [Debtor] decided at that time to obtain the needed funds by what came to [be] known as the "Bridge Loans."  The Bridge Loans, dated February 26, 2001, and March 21, 2001, were intended to be a "bridge" to allow [Debtor] to reach a point where it could obtain other investors or be sold.  The Bridge Loans took the form of convertible debentures issued to Leach, Blue Chip, Akamai and three other lenders.  The debentures were secured by a first priority security interest in all of [Debtor's] assets.  At the lenders' election, the debentures were convertible into common stock.  The initial balance of the Bridge Loans included $3.15 million, plus attorneys fees and interest, which was disbursed to Akamai. . . .  This satisfied [Debtor's] $3.15 million obligation under the Akamai Transaction and resulted in the cancellation of the undrawn upon letters of credit that had been posted in connection with Blue Chip's and Leach's guarantees of [Debtor's] payment obligation under the Akamai Transaction.  The Trustee contends, and [Debtor] does not appear to dispute, that the letters of credit were, in fact, cancelled prior to the payments to Akamai. [Debtor] itself received additional Bridge Loan disbursements of $3.6 million in March, 2001.  The outstanding balance of the Bridge Loans was approximately $7 million at that time.

The effects of using Bridge Loan proceeds in the spring of 2001 to pay Akamai was to convert [Debtor's] unsecured, contingent liability to Blue Chip to a first-priority secured debt.  There seems to be no question that, if [Debtor] was insolvent at the time, the Bridge Loans transferred to Blue Chip a security interest which would have been voidable as a preference under *section 547 of the Bankruptcy Code* in the bankruptcy of [Debtor] that followed. . . .

After the Bridge Loans were executed, [Debtor's] financial position did not improve, and [Debtor's] management was unable to find a buyer for the company.

As a result, on July 19, 2001, the Chapter 11 petition was filed.  In August 2001, the court approved an agreement for Debtor-in -Possession financing of a minimum of $2 million (the "DIP Loan").  Leach and Blue Chip were the lenders under the DIP Loan. Tthe terms of the DIP Loan granted Leach and Blue Chip first position, priming liens in [Debtor's] pre-and post-petition assets. Furthermore, the terms of the DIP Loan allowed [Debtor] to use DIP Loan Proceeds to repay the Bridge Loans.

During the pendency of the Chapter 11 case, Leach and Blue Chip advanced approximately $4.9 million pursuant to the terms of the DIP Loan.  Approximately $3.9 million of this amount was applied to the pre-petition Bridge Loans of Leach and Blue Chip.  Thus, during the Chapter 11 case, the total amount of Leach and Blue Chip's Bridge Loans was reduced to $1,180,838 from their original balances of $5,150,000.  The DIP Loan balance was increased to $4,935,162.  The difference between the total amount paid on the Bridge Loans was $966,000.  This is the amount of "new cash" loaned to [Debtor] by Leach and Blue Chip during the Chapter 11 case.

Ultimately this case did not proceed successfully under Chapter 11.  In April, 2003, the Court held a hearing on the United States Trustee's motion to convert the case to Chapter 7.  To resolve the Motion to convert, a settlement agreement was negotiated.  That agreement was among Blue Chip, Leach, [Debtor], the Committee of Unsecured Creditors in [Debtor's] bankruptcy, and the United States Trustee.  It was approved by the [c]ourt in June, 2003 (the "Settlement Agreement").  The Settlement Agreement provided for the case to be converted to Chapter 7 and contained releases of any claims [Debtor] might have against Leach and Blue Chip.  Pursuant to the Settlement Agreement, Leach and Blue Chip were to advance an additional $175,000 to the Chapter 7 Trustee for payment to unsecured creditors.  Under this settlement, Leach and Blue Chip also were to pay certain other administrative expenses of the Chapter 11 case, up to $249,000.

Of critical importance to various of the Trustee's claims for relief against [GDC] is the fact that [GDC] acted as counsel to both [Debtor] and Leach in late 2000 and early 2001, during the negotiation of the Akamai Transactions and the Bridge Loans.  The representation by [GDC] of both [Debtor] and Leach during the pre-bankruptcy case is undisputed.  [GDC] began to work for [Debtor] in 1999, as [Debtor's] primary corporate attorney.  [GDC] was recommended to [Debtor] by Leach, who was also using [GDC] as his attorney at the time.  The Leach and Blue Chip guarantees of [Debtor's] obligations to Akamai were structured by Roger Moody, CFO of [Debtor], with [GDC's] help.  [GDC] represented both Leach and [Debtor] in the Akamai Transaction and in connection with the Bridge Loans.

> Despite the dual representation, [GDC] assured [Debtor] that it could "manage" the conflict between Leach and [Debtor].
>
> Further, according to [Trustee], [GDC] continued to act as counsel for both [GDC] and Leach at least until June 2001, immediately prior to Chapter 11 filing by [Debtor].  There is also some evidence in the record that [GDC] continued to represent [Debtor] as well as Leach even after the bankruptcy was filed, in connection with the DIP Loans.

(*In re ms55, Inc. [Hill v. Gibson, Dunn & Crutcher, LLP]*, Adversary No. 04–1650 ABC

[hereinafter "Adversary P. Docket"], Docket No. 101 at 2–5 [Summ. J. Order] [hereinafter

"Order"] [footmark and internal citations omitted] [emphasis in original].)

The bankruptcy court summarized the basis for Trustee's claims against GDC as follows:

> [GDC], while owing professional duties to [Debtor] acted to protect the interests of another client, Leach, contrary to the interests of [Debtor].  According to [Trustee], [GDC] undertook to structure the Bridge Loans so that Leach, Blue Chip, and Akamai would receive security interests and/or payments from [Debtor] that were either fraudulent or preferential.  Thus, according to the amended complaint, [GDC] undertook to conceal the potentially avoidable fraudulent transfers or preferences from [Debtor's] bankruptcy counsel, the Unsecured Creditors' Committee and the [c]ourt.  The Trustee argues that, as a result of [GDC's] divided loyalties and deception, Leach's avoidable pre-petition collateral position was never scrutinized or attacked.  Furthermore, the [c]ourt was led to approve the DIP Loan which preferentially improved the secured positions of Leach and Blue Chip and allowed voidable debts to be paid.  As a further result of [GDC's] deception, [Trustee] contends, the Unsecured Creditor's Committee and the U.S. Trustee were led to consent to the Settlement Agreement, and the [c]ourt was led to approve it, including the releases which shielded Leach and Blue Chip from any liability as a result of any voidable transfers made to them by [Debtor].

(*Id.*, Docket No. 101 at 5–6 [Order].)

GDC asserted three defenses: (1) Trustee could not establish that any damages to Debtor

were caused by any of GDC's alleged misdeeds; (2) the Settlement Agreement barred Trustee's

claims; and (3) the doctrine of *in pari delicto* barred Trustee from recovering for any damages

from GDC's wrongful conduct in which Debtor participated. (*Id.*, Docket No. 101 at 6 [Order].)

The bankruptcy judge granted summary judgment in favor of GDC. (*Id.*, Docket No. 101

at 16 [Order].) First, he found that there were sufficient allegations before the court that, if

proven, would "establish liability [of GDC] for causing, or aiding and abetting in causing, or

conspiring to cause the harm complained of by Trustee." (*Id.*, Docket No. 101 at 7–8 [Order].)

Second, the bankruptcy judge found there was a genuine issue of material fact as to whether the

Settlement Agreement barred Trustee's claims. (*Id.*, Docket No. 101 at 8 [Order].)

Finally, the bankruptcy judge determined that all of Trustees claims were barred by the

doctrine of *in pari delicto*.[1] (*Id.*, Docket No. 101 at 9–11 [Order].)   In explaining his decision,

the bankruptcy judge first noted that under section 541(a) of the Bankruptcy Code, the trustee

stands in the debtor's shoes and is subject to all defenses to which the debtor would have been

subject at the time he filed for bankruptcy. (*Id.*, Docket No. 101 at 9 [Order].) Next, the

bankruptcy judge found that by Trustee's own allegations, Debtor engaged in all of GDC's

allegedly wrongful conduct. (*Id.*, Docket No. 101 at 11 [Order].) The bankruptcy judge went on

to reason that because Debtor would have been barred from bringing the claims against GDC by

the doctrine *in pari delicto*, Trustee's action was also barred. *Id.* Additionally, the bankruptcy

judge noted:

---

[1]The instant appeal centers upon this doctrine, which prohibits a party who was complicit
in fraudulent or inequitable conduct from recovering from another participant in that conduct.
*See Sender v. Kidder Peabody & Co., Inc.*, 952 P.2d 779, 782 (Colo. App. 1997).

> To the extent the alleged wrongful joint conduct of [Debtor] and [GDC] may have given rise to claims directly in favor of [Debtor's] creditors for breach of fiduciary duty or other insolvency-related causes of action, [Debtor], or successors to [Debtor], are simply without standing to assert such claims. Such claims belong only to the creditors themselves.

*Id.*

The bankruptcy judge found unavailing Trustee's attempt to escape the application of the doctrine by asserting his claims against GDC pursuant to section 544(a) of the Bankruptcy Code, which allows a trustee to stand in the shoes of a hypothetical judgment lien creditor for some purposes. (*Id.*, Docket No. 101 at 11–13 [Order].) The bankruptcy judge considered Trustee's allegations in his amended complaints and found that they supported "claims for damages inflicted on [Debtor] by the wrongful conduct of [GDC]. which presented "the classic case of a trustee pursuing claims *of the debtor* against a third party which are property of the estate by operation of *section 541 of the Bankruptcy Code.*" (*Id.*, Docket No. 101 at 11 n.5 [Order] [emphases in original].) These claims, found the bankruptcy judge, were, therefore, not actionable under section 544(a). *Id.* Ultimately, the bankruptcy judge granted summary judgment in favor of GDC on all claims. *Id.*

**2.      *Procedural History***

The underlying adversary proceeding from which this appeal is taken was commenced on June 18, 2004 by Trustee's filing of his complaint in the United States Bankruptcy Court for the District of Colorado. (*Id.*, Docket No. 1 [Compl.].) On June 25, 2004, Trustee filed an amended complaint, alleging GDC was liable for: (1) breach of fiduciary duty; (2) legal malpractice and negligence; (3) civil conspiracy to commit fraudulent transfers and breach of fiduciary duty; (4)

aiding and abetting breach of fiduciary duties; and (5) securities fraud.  (*Id.*, Docket No. 3 [Am.

Compl.].)  Trustee also argued that GDC's claim for payment for legal services is disallowed

under Colorado law and the Bankruptcy Code, but voluntarily dismissed without prejudice this

claim after the bankruptcy court granted summary judgment dismissing Trustee's other claims.

(*Id.*, Docket No. 3 [Am. Compl.], Docket No. 123 [Dismissal of Sixth Claim].)  On August 18,

2004, GDC answered Trustee's amended complaint.  (*Id.*, Docket No. 9 [Answer].)  On February

28, 2006, the bankruptcy court granted summary judgment in favor of GDC.  *In re ms55*, 338

B.R. 88.  On March 10, 2006, Trustee filed a motion to alter or amend judgment.  (*Id.*, Docket

No. 109 [Mot. to Alter].)  On May 5, 2006, the bankruptcy court issued an order denying

Trustee's motion on all but his sixth claim for claim disallowance.[2]  (*Id.*, Docket No. 116 [Order

on Mot. to Alter].)

 On June 27, 2006, Trustee filed a notice of appeal in this court.  (Notice of Appeal [filed

June 27, 2006].)  On March 16, 2007, Trustee filed his opening brief, arguing the bankruptcy

judge erred in finding the *in pari delicto* doctrine barred his claims.  (Opening Br. of Appellant

[filed Mar. 16, 2007] [hereinafter "Trustee's Br."].)  On April 2, 2007, GDC responded to

Trustee's appeal.  (Resp. Br. of Appellee, Gibson, Dunn & Crutcher[,] LLP [filed Apr. 2, 2007]

[hereinafter "Def.'s Resp."].)  On April 19, 2007, Trustee replied in support of his appeal.  (Reply

Br. [filed Apr. 19, 2007] [hereinafter "Trustee's Reply"].)  This matter is fully briefed.

---

 [2]Trustee does not attack the bankruptcy judge's dismissal of his sixth claim; I, therefore,
do not address it for the remainder of the opinion.  (*See* Trustee's Br.; Def.'s Resp.; Trustee's
Reply.)

## ANALYSIS

### 1.    *Standard of Review*

On a bankruptcy appeal, the district court is to review the bankruptcy court's conclusions

of law *de novo*. *Branding Iron Motel, Inc. v. Bank of Mid America (In re Branding Iron Motel,*

*Inc.)*, 798 F.2d 396, 399 (10th Cir. 1986); *see also Lacy v. Stinky Love, Inc. (In re Lacy)*, 304

B.R. 439, 443 (D. Colo. 2004).  The district court defers to the bankruptcy court's findings

regarding the fundamental facts unless clearly erroneous.  Fed. R. Bankr. P. 8013 (2007);

*Hedged-Investments Assocs., Inc. v. Brinker (In re Hedged-Investments Assocs., Inc.)*, 380 F.3d

1292, 1297 (10th Cir. 2004).

### 2.    *Evaluation of Claims*

Trustee argues the bankruptcy court erred in holding the doctrine of *in pari delicto* bars

his claims because: (1) controlling law in the Tenth Circuit holds otherwise; (2) the doctrine does

not apply to claims for self-dealing pursued under section 544(a) of the Bankruptcy Code; (3) the

doctrine does not bar claims for breaches of the duties of controlling fiduciaries and insiders; and

(4) the doctrine does not bar claims arising from post-petition conduct of the debtor.  (Trustee's

Br.)  I address only Trustee's first and second arguments, because — together — they resolve the

instant appeal in favor of Trustee.

According to Trustee, the judge below summarily rejected or ignored altogether a body of

controlling reported opinions which mandate granting trustees the power under section 544(a) to

pursue derivative claims of a corporation for fiduciary breaches by self-dealing insiders which also

damage creditors once the corporation is insolvent.  (Trustee's Br. at 13–17.)  GDC counters

that: (1) Trustee failed to sufficiently plead section 544(a) as a basis for relief in his amended complaint; (2) section 544(a) is not intended to allow a trustee to pursue the *tort* claims of a hypothetical creditor; and (3) all of the cases upon which Trustee relies are distinguishable or have been limited by more recent cases.

### a.    *Relevant Legal Background*

As noted briefly above, this appeal centers upon the doctrine of *in pari delicto*, which prohibits a party to fraudulent or inequitable conduct from recovering from another participant in that conduct. *See Sender v. Kidder Peabody & Co., Inc.*, 952 P.2d 779, 782 (Colo. App. 1997). Because both parties to such conduct are culpable, the law will aid neither. *Id.*; *see also Sender v. Simon*, 84 F.3d 1299, 1307 (10th Cir. 1996) (noting "one who has himself participated in a violation of law cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction"). On appeal, neither party contests the bankruptcy judge's finding that by Trustee's own allegations, Debtor and GDC were *in pari delicto*. (Adversary P. Docket, Docket No. 101 at 11; *see* Trustee's Br.; Def.'s Resp.) The parties do dispute, however, whether, under the facts of this case, *in pari delicto* can be applied against Trustee. (*See* Trustee's Br. *passim*; Def.'s Resp. *passim.*)

The bankruptcy judge considered whether Trustee's claims were actionable under either section 541(a) or section 544(a) of the Bankruptcy Code. (Adversary P. Docket, Docket No. 101 [Order].) Thus, it is necessary to understand the nature of each of these sections. Pursuant to section 541(a), filing a petition for bankruptcy creates a bankruptcy estate. 11 U.S.C. § 541(a) (2006). With few enumerated exceptions, the estate incorporates all legal or equitable interests of

the debtor, including causes of action belonging to the debtor at the commencement of the

bankruptcy case. *Id.*; *Simon*, 84 F.3d at 1305. When asserting claims of the debtor, a bankruptcy

trustee stands in the shoes of his predecessor in interest, and thus is subject to all defenses to

which the debtor would have been subject prior to filing for bankruptcy. *Id*

      More pertinent to the outcome of the instant appeal is the bankruptcy judge's analysis

under section 544(a) of the Bankruptcy Code. In relevant part, this section establishes that "[t]he

trustee shall have . . . the rights and powers of, or may avoid any transfer of property of debtor or

any obligation incurred by the debtor that is voidable by" a hypothetical judgment lien creditor.

11 U.S.C § 544(a)(1) (2006). This means that under section 544(a), the trustee may stand in the

shoes of a hypothetical judgment lien creditor for at least some purposes. *Zilkha Energy Co. v.*

*Leighton*, 920 F.2d 1520, 1524 (10th Cir. 1990). As the Tenth Circuit has explained:

> To understand the full import of [section] 544, one must first understand the
> power of a bankruptcy trustee to stand in the shoes of an hypothetical creditor of
> the debtor to effect a recovery from a third party. Simply stated, from the
> reservoir of equitable powers granted the trustee to maximize the bankruptcy
> estate, Congress has fashioned a legal fiction. Not only is a trustee empowered to
> stand in the shoes of a debtor to set aside transfers to third parties, but the fiction
> permits the trustee also to assume the guise of a creditor with a judgment against
> the debtor. Under that guise, the trustee may invoke whatever remedies provided
> by state law to judgment lien creditors to satisfy judgments against the debtor.

*Id.*

      **b.**    ***Did Trustee Properly Plead a Section 544(a) Claim?***

      Trustee insists controlling caselaw required the bankruptcy judge to grant Trustee

standing to pursue derivative claims of the corporation for fiduciary breaches by self-dealing

insiders that resulted in damage to creditors.  (Trustee's Br. at 13–17.)  I review this question of law *de novo*.

>   ***i.       In re Porter McLeod***

As an initial matter, Trustee argues *PM Denver, Inc. v. Porter (In re Porter McLeod, Inc.)*, 231 B.R. 786 (D. Colo. 1999) definitively supports his right to *elect* whether to bring his claims under section 541(a) or 544(a), and that the bankruptcy judge's failure to permit such election constituted reversible error.  (Trustee's Br. at 13–16.)  Trustee misses the mark.

The district court in *In re Porter McLeod* stated simply that  "where . . .  more than one section of the Bankruptcy Code provides a trustee with authority to bring an action, the trustee may choose which provision to employ."  231 B.R. at 792.  The bankruptcy judge, in turn, concluded that "[t]o the extent that *Porter McLeod,* . . . hold[s] that a Trustee may simply elect to proceed under either *section 541* or *544*, without regard to the nature of the claim asserted, this Court respectfully disagrees."  (Adversary P. Docket, Docket No. 101 at 11 n.5 [Order] [emphasis in original].)  In support, the bankruptcy judge cited *Sender v. Simon*, in which the Tenth Circuit noted "sections 541 and 544(b) of the Bankruptcy Code are mirror images of one another.  When the trustee proceeds on a state claim under the former, the cause of action must belong to the debtor itself, but under the latter, the cause of action must belong to an actual creditor of the debtor."  (*Id.* [citing 84 F.3d at 1305 n.5].)

I find the bankruptcy court's assessment that a trustee may not "simply elect to proceed under either *section 541* or *544*, without regard to the nature of the claim asserted" is not only correct as a matter of law, but it is not in conflict with *In re Porter McLeod*.  (*Id.*)  Neither party

contests that section 544(a)(1) only allows a trustee to assert claims on behalf of creditors, whereas section 541(a) only allows a trustee to assert claims on behalf of the debtor.  (*See* Trustee's Br.; Def.'s Resp.)  Thus, clearly, whether a party can bring a claim pursuant to either of these sections *inevitably* depends on the *nature of the claim asserted*.  In finding that a trustee may elect whether to bring his claims under section 541(a) or 544(a), the court in *In re Porter McLeod* did not indicate otherwise.

　　In the instant case, the bankruptcy judge did not determine whether a trustee, given allegations that could support a claim under section 541(a) and/or 544(a), could elect under which section to bring the claim.  (*See* Adversary P. Docket, Docket No. 101 [Order].)  Instead, the bankruptcy judge concluded that Trustee's claims were not proper under section 544(a) because of the *nature of his allegations* — allegations indicating that Trustee was pursuing claims of the debtor against a third party, *not* claims of creditors.  (*Id.*, Docket No. 101 at 11 n.5 [Order].)  Nothing in this finding conflicts with the law as stated in *In re Porter McLeod*.  Moreover, GDC has identified no caselaw suggesting that a trustee, given allegations supporting causes of action pursuant to both sections 541(a) *and* 544(a), cannot state a claim under both sections.  (*See* Def.'s Resp.)  Caselaw to the contrary, however, is readily available.  *Verco Indus. v. Spartan Plastics (In re Verco Indus.)*, 704 F.2d 1134, 1137 (9th Cir. 1983) (upholding district court's finding that trustee "need not elect between invalidating the property transfer on behalf of the creditors under 11 U.S.C. § 544[b] and recovering the full sale price on behalf of the debtor's estate under 11 U.S.C. § 541[a][1]"); *In re Porter McLeod*, 231 B.R. at 792 (finding that a

trustee may choose whether to bring a claim under section 544[a] or 541[a], and that such choice "may turn on the availability of a particular legal defense").

Of course, what a trustee must do is support his claims under either section with appropriate allegations, *e.g.*, if he brings a claim pursuant to: (1) section 541(a), he must allege the debtor was injured and the trustee is asserting rights on the debtor's behalf; and/or (2) section 544(a), he must assert that the hypothetical judgment lien creditor was injured, and the trustee is asserting rights on the creditor's behalf. Nothing stops Trustee from making allegations supporting both of these propositions, as certainly both may be true simultaneously. *See Duncan v. Zubrod (In re Duncan)*, 329 F.3d 1129, 1203 (10th Cir. 2003) (quoting *Pitzak v. Office of Personnel Mgmt.*, 710 F.2d 1476, 1470 [10th Cir. 1983]) ("When two statutes are capable of coexistence, it is our duty, 'absent a clearly expressed congressional intention to the contrary, to regard each as effective.'"). Based on the foregoing, I find: (1) the bankruptcy judge did not err when he found "Trustee may [not] simply elect to proceed under either *section 541* or *544*, without regard to the nature of the claim asserted," (Adversary P. Docket, Docket No. 101 at 11 n.5 [Order] [emphasis in original].); (2) given appropriate supportive allegations, a trustee may assert claims under both sections 541(a) and 544(a) in the same complaint.

### ii.      *Sufficiency of Trustee's Allegations of Harm to Creditors*

Trustee argues the bankruptcy court erred in finding that he failed to plead sufficiently a section 544(a) claim. (Trustee's Reply at 7–10.) The bankruptcy judge found that "Trustee's [a]mended [c]omplaint herein asserts claims for damages inflicted on [Debtor] by the wrongful conduct of [GDC]," which are not actionable under section 544(a). (Adversary P. Docket,

Docket No. 101 at 11 n.5 [Order].)  The parties dispute the proper standard of review for this

determination.  GDC contends that the question is one of mixed law and fact, involving primarily

factual inquiries that should be reviewed under the clearly erroneous standard.  (Def.'s Resp. at

1–2.)  Trustee argues that in answering this question, the only portion of the record the

bankruptcy court examined was the amended complaint, rendering his conclusion a legal one.

(Trustee's Reply at 4–6.)  This is not a close question.  When the bankruptcy judge concluded

that "Trustee's [a]mended [c]omplaint . . . asserts claims for damages inflicted on [Debtor] by the

wrongful conduct of [GDC]," and thus could not support a claim under section 544(a), the court

made a determination regarding the legal sufficiency of Trustee's amended complaint.  (Adversary

P. Docket, Docket No. 101 at 11 n.5 [Order].)  It is well-established that the legal sufficiency of a

complaint is a question of law to be reviewed *de novo*.  *Sutton v. Utah State Sch. for the Deaf &*

*Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  I apply that standard here.

Trustee's amended complaint, in relevant part, asserted claims against GDC for: (1)

breach of fiduciary duty; (2) legal malpractice/negligence; (3) civil conspiracy; (4) aiding and

abetting breach of fiduciary duties; and (5) securities fraud under Colorado Securities Act.

(Adversary P. Docket, Docket No. 3 [Am. Compl.])  To Trustee's credit, he asserts that only his

third and fourth claims are viable under section 544(a) and Colorado law.  (Trustee's Reply at

11.)  Thus, I address only those claims and find dismissal of Trustee's first, second, and fifth

claims uncontested.  Claim three alleges that "[GDC] engaged in a civil conspiracy to commit

fraudulent transfers in breach of its fiduciary duty by agreements with Leach, the Leach Trust,

Blue Chip, Blue Chip's counsel, Akamai, members of [Debtor's] management including Roger

Moody and Robert Ogden, and other Bridge lenders." (Adversary P. Docket, Docket No. 3 ¶ 151 [Am. Compl.].)  Claim four alleges that GDC aided and abetted Debtor's officers and directors in breaching their fiduciary duties by participating in or approving fraudulent transfers. (*Id.*, Docket No. 3 ¶¶ 157–60 [Am. Compl.].)

The bankruptcy judge found that Trustee's amended complaint failed to assert damages to creditors, and, instead, focused solely on damages to Debtor.  (*Id.*, Docket No. 101 at 11 n.5 [Order].)  Trustee contests this finding based on the following allegations contained in his amended complaint:

> ¶ 135 At all times after December 5, 2000, Blue Chip, Leach and [Debtor's] management were known by [GDC] to have fiduciary duties to unsecured creditors of [Debtor] which prohibited self-dealing and preferences for insiders and required them to preserve the assets in trust for such creditors.

> ¶ 137 Self-dealing insiders of [Debtor] including Blue Chip, Leach, [and] Ogden were unable to ratify or waive [GDC's] conflict which was undisclosed to other shareholders and general creditors.

> ¶ 143 GDC's fiduciary duties to [Debtor] encompassed duties which [Debtor] and its management owed to general creditors at all times after December 1, 2000 to avoid self-dealing and insider preferences.

> ¶ 155 The civil conspiracy in which [GDC] participated was attended by circumstances of fraud of willful and reckless disregard of the rights of [Debtor], unsecured creditors and smaller shareholders.

> ¶ 157 The officers and directors of [Debtor] breached their own fiduciary duties to unsecured creditors and/or smaller shareholders in [Debtor] by participating in or approving [GDC's breach of fiduciary duties].

> ¶ 160 GDC's conduct in aiding and abetting those breaches were attended by circumstances of fraud or willful and reckless disregard of the rights of the debtor, unsecured creditors, the Trustee and smaller shareholders.

(*Id.*, Docket No. 3 [Am. Compl.].)

Although Trustee's amended complaint is certainly replete with allegations of conduct by GDC that damaged *Debtor*, the above allegations clearly reflect the complaint's dual focus on conduct by GDC that damaged *creditors*.  Regarding the two particular claims at issue, I find Trustee sufficiently alleged the following claims on behalf of the corporation's *creditors*: (1) GDC engaged in a civil conspiracy with Leach, Blue Chip, Akamai, and members of Debtor's management to commit fraudulent transfers that breached fiduciary duties to unsecured creditors; and (2) GDC aided and abetted Debtor's officers and directors in breaching their fiduciary duties to unsecured creditors.  Thus, I find the bankruptcy judge's determination that Trustee's allegation only supported "claims *of the debtor* against a third party" was in error.[3]  (*Id.*, Docket No. 101 at 11 n.5 [Order] [emphasis in original].)

### iii.    The Scope of Section 544(a)

Even if, as I have just found, Trustee has asserted some claims on behalf of creditors, GDC contends these particular claims are not actionable under section 544(a), because the section endows a trustee solely with a hypothetical judgment lien creditor's *avoidance* rights.  (Def.'s Resp. at 16–17.)  Trustee, on the other hand, contends that section 544(a) endows him with the right to bring *any actions* a hypothetical judgment lien creditor could bring to recover on Debtor's

---

[3]Strangely, another portion of the bankruptcy judge's opinion *supports* my finding here. The judge noted: "[T]he basis for all of [Trustee's] claims is that [Debtor] committed wrongful acts, *i.e.*, violation of fiduciary duties it had to its creditors and shareholders or securities fraud, and that [Debtor] was either caused to commit such violations or was assisted in committing such violations by [GDC]."  (Adversary P. Docket, Docket No. 101 at 11 n.5 [Order].)

debt, which includes the instant claims against GDC for conspiring and aiding and abetting in certain Debtor-insider's breach of fiduciary duty to corporate creditors. (Trustee's Br. at 13–17.) The parties do not appear to dispute that whatever rights a trustee has under section 544(a) are, at minimum, circumscribed by Colorado state law. *See Zilkha Energy Co.*, 920 F.2d at 1524 (noting "remedies available under section 544 are those provided by state law"); (Trustee's Br. at 16; Def.'s Resp. 15–16). The foregoing brings up two distinct, but equally important, questions. First, under section 544(a), is the trustee's grant of authority limited solely to the avoidance powers of a hypothetical judgment lien creditor? Second, if a trustee's powers under section 544(a) are more expansive than mere avoidance, does Colorado state law create a cause of action for breach of fiduciary duty by a debtor corporation's insiders that may be asserted by judgment lien creditors? I explore both of these questions of law *de novo*.

### (1)        *Section 544(a)'s Grant of More than Avoidance Powers*

It is true, as GDC points out, that section 544(a) has often been characterized as granting trustees certain avoidance powers. *See, e.g.*, *Simon*, 84 F.3d at 1304. In fact, it appears the bankruptcy judge took this view:

> a claim brought by a trustee under *section 544(a)* is a claim which devolves from subrogation of the trustee to avoiding powers of hypothetical creditors under non-bankruptcy law . . . . The purpose of the section is to allow the trustee to avoid transfers of property of the debtor which would be avoidable under state law by such "ideal" creditors . . . .

(Adversary P. Docket, Docket No. 101 at 11 n.5 [Order] [emphasis in original].) This analysis presumably led the bankruptcy court to conclude:

> To the extent the alleged wrongful joint conduct of [Debtor] and [GDC] may have given rise to claims directly in favor of [Debtor's] creditors for breach of fiduciary duty or other insolvency-related causes of action, [Debtor], or successors to [Debtor], are simply without standing to assert such claims.  Such claims belong only to the creditors themselves.

(*Id.*, Docket No. 101 at 11 [Order].)  I disagree.

Courts concur that the plain language of section 544(a) endows a trustee with a hypothetical judgment lien creditor's avoidance powers.  However, courts differ as to whether section 544(a) also permits a trustee to assert causes of actions in tort that are available to a hypothetical lien creditor under applicable state law to recover on a judgment against the debtor. The Eighth, Ninth, and Eleventh Circuits have construed the section 544(a) power narrowly, holding that a trustee lacks standing to assert claims for damages on behalf of the debtor corporation's creditors.  *See Williams v. Cal.1st Bank*, 859 F.2d 664 (9th Cir. 1998) (trustee lacked standing to pursue securities law claims against bank on behalf of debtor's investors); *E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979 (11th Cir. 1990) (trustee lacked standing to pursue claims on behalf of debtor's customer/creditors); *Mixon v. Anderson (In re Ozark Rest. Equip. Co., Inc.)*, 816 F.2d 1222 (8th Cir. 1987) (alter ego claims belong to creditors under Arkansas law, and a trustee may not assert a creditor's claim under section 544).  The Second, Fifth, and Seventh Circuits, on the other hand, have taken a more expansive view of a trustee's powers under section 544(a).  *See St. Paul v. Pepsico, Inc.*, 884 F.2d 688 (2d Cir. 1989) (alter ego claim is estate property and must be asserted by trustee, not an individual creditor); *Koch Refining v. Farmers Union Cent. Exchg., Inc.*, 831 F.2d 1339 (7th Cir. 1987), *cert. denied*, 485 U.S. 906 (creditors alleging indirect injury did not have standing to sue outside the bankruptcy court unless

-19-

the trustee abandoned the claims available to the estate); *S.I. Acquisition, Inc. v. Eastway Delivery Servs., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142 (5th Cir. 1987) (creditor's claims that a third party stripped the corporation of assets for his own benefit to the detriment of creditors was subject to automatic stay provision of the Bankruptcy Code). *But see Shearson Lehman v. Wagoner*, 944 F.2d 114, 118–20 (2d Cir. 1991) ("[W]hen a bankrupt corporation has joined with a third party in defrauding its creditors, the trustee cannot recover against the third party for damage to the creditors.").

Much of the debate surrounding whether a trustee may assert non-avoidance claims under section 544(a) centers around the Supreme Court's opinion in *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972). In *Caplin*, the Court held that a reorganization trustee lacked standing under the old Bankruptcy Act to assert on behalf of the corporation's creditors (debenture holders) claims of misconduct against a third party (the indenture trustee). 406 U.S. at 434. The Court identified three factors militating against standing. First, the statutory reorganization scheme in no way suggested that the trustee should assume the responsibility of suing third parties on behalf of creditors and thus enabling the trustee "to collect money not owed to the estate." *Id.* at 428. Second, the debtor corporation itself had no claim against the third party indenture trustee, because — at most — the indenture trustee and debtor corporation were *in pari delicto. Id.* at 430. Thus, the court could envision no advantage in according the trustee standing to sue, since the indenture trustee would be subrogated to the claims of the creditors. *Id.* Third, because the trustee's action would not preempt suits by individual creditors, and because it would be "extremely doubtful that the trustee and debenture holders would agree on the amount

-20-

of damages to seek, or even on the theory on which to sue," the Court concluded that the trustee's desired suit would lead to inconsistent judgments and increased litigation. *Id.* at 431–32. Although *Caplin* was decided under the old Bankruptcy Act, many court have determined that the concerns espoused by the Court are equally relevant to the current Bankruptcy Code. *See, e.g.,* *E.F. Hutton & Co.*, 901 F.2d at 986; *In re Ozark Rest. Equip. Co.*, 816 F.2d at 1227–28.

When Congress overhauled the Bankruptcy Act in 1978, it considered and rejected a provision that was intended to overrule *Caplin*. *See In re Ozark Rest. Equip. Co.*, 816 F.2d at 1228 n.9 (citing H.R. 8200, 95th Cong., 1st Sess. 416–17 [1977]; H.R. Rep. 95–595, 95th Cong., 1st Sess. 370–71 [1977]).  Several courts view Congress' rejection of this provision as a definitive statement that no trustee "has the power under section 544 of the Code to assert general causes of action . . . on behalf of the bankrupt estate's creditors." *Id.*  However, this court finds that an analysis of section 544(a) itself, the salient differences between *Caplin* and the instant action, and controlling Tenth Circuit precedent, dictate that Trustee does have standing to pursue certain damages actions on behalf of Debtor corporation's creditors under section 544(a).

First, the language of section 544(a) supports a finding that trustees are endowed with more than solely avoidance powers.  The section reads: "The trustee shall have . . . *the rights and powers of*, *or* may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by" a hypothetical judgment lien creditor.  11 U.S.C. § 544(a) (2006) (emphases added).

Second, *Caplin* is poignantly distinguishable.  As an initial matter, I note that the current Bankruptcy Code did, for the first time, give the trustee status as a hypothetical judgment lien

creditor.  P. MURPHY, CREDITORS' RIGHTS IN BANKRUPTCY § 12.04, at 12–5 (1980).  Thus, the

*Caplin* court could not have been considering the implications of this section and its endowment

of creditor standing on the trustee.  Only under the current Bankruptcy Code is it conceivable that

the trustee could assert the rights of hypothetical judgment lien creditors.  *See id.*  More

importantly, in *Caplin*, the trustee was asserting particularized claims on behalf of debenture

holders whose claims were personal to them and amounted to only $4.3 million of the $60 million

in total liability of the debtor corporation.  *See* 406 U.S. at 419; *accord Koch Refining*, 831 F.2d

at 1348.  In the instant case, Trustee, by asserting claims on behalf of the hypothetical judgment

lien creditor, is necessarily asserting claims general to any and all judgment lien creditors.  Why

this matters requires a little unpacking**.**

A trustee is a creature of statute — his powers are defined by the Bankruptcy Code alone,

and when he exercises his bequeathed powers, he does so to the exclusion of all others.  *Delgado*

*Oil Co., Inc. v. Torres*, 785 F.2d at 857, 861 (10th Cir. 1986).  "This special status enables the

trustee to achieve an equality of distribution among the corporation's unsecured creditors."  *Id.*

As the House Report stated regarding the Bankruptcy Code's automatic stay provision: "Without

it, certain creditors would be able to pursue their own remedies against the debtor's property.

Those who acted first would obtain payment of the claims in preference to and to the detriment of

others."  H.R.Rep. No. 595, 95th Cong., 2nd Sess. 340, *reprinted in* 1978 U.S.C.C.A.N. 5963,

6297.  It stands to reason, then, that a trustee — to achieve equity for all unsecured creditors —

must be the sole entity with the power to pursue suits regarding damages claims common to all

unsecured creditors.  *St. Paul Fire & Marine Ins. Co.*, 884 F.2d at 702 ("If a claim is a general

one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action."); *Koch Refining, Inc.*, 831 F.2d at 1348 (noting that Congress' rejection of a provision overruling *Caplin* "does not affect a trustee's right to bring a general action on behalf of all creditors rather than a personal one on behalf of only some").

This principle was implicitly affirmed by the Tenth Circuit in *Delgado.* 785 F.2d at 861. There, the court held that the bankruptcy case preempted an individual creditor's tort claim based on the debtor corporation's director's breach of fiduciary duty to the creditor by transferring corporate assets to promote his own personal interests over those of all creditors. *Id.* The court explained that "the filing of the bankruptcy petition by [the debtor corporation] transmuted the legal rights of its creditors seeking recovery of corporate debts." *Id.* More specifically, because the director, under Colorado law, had a trust relationship with *all* creditors — not just the creditor filing suit — the Bankruptcy Code prohibited the lawsuit by an individual creditor. *Id.* The court went on to state, "The intervention of the bankruptcy case now prevents the inequity of one creditor recovering more on its debt than the remaining similarly situated creditors can recover on theirs." *Id.* Additionally, unlike the claim at issue in *Caplin*, the Tenth Circuit found the *Delgado* creditor's damages action was property of the estate. *Id.* According to the court, central to Colorado's common law doctrine establishing a limited fiduciary duty of the director of an insolvent corporation to the corporation's creditors "is the recognition that *creditors* may pursue this remedy *on behalf of the corporation* to ensure that *all creditors* are treated equally." *Id.* (emphases in original).  Thus, "[e]ven under the common law, [the creditor's] cause of action

is maintainable only through the debtor corporation; hence, it is property of the estate." *Id.* at 861. *Delgado*'s holding controls the outcome of the instant case. By barring a creditor from bringing a damages action against a debtor corporation's director for breach of fiduciary duty to the creditor, the Tenth Circuit implicitly found the trustee has standing to bring such suits.

GDC argues *Delgado* relates only to a trustee's right to avoid preferential transfers, rather than his right to pursue causes of action in tort. (Def.'s Resp. at 20–21.) This reading of *Delgado* is untenable. The court was careful to explain that "however skillfully pleaded," a creditor's tort action attempting to recover damages common to all creditors for preferential transfers "is preempted by the bankruptcy case." 785 F.2d at 861. The holding of *Delgado* explicitly strips creditors of their common law right to bring an action in tort for a debtor corporation's director's breach of his fiduciary duty to all similarly situated creditors, because the bankruptcy case preempts such suits. *Id.* The necessary corollary to this holding is that once a corporation files for bankruptcy, the trustee, alone, has the authority to bring such suits. Although the court does emphasize that the factual allegations underlying the creditor's breach of fiduciary duty claim were preferential transfers by a director of the debtor corporation, the court does not, and cannot under the facts of the case, limit its holding to a trustee's exercise of his avoidance powers. *Id.* Instead, the court makes clear that a trustee has the exclusive right to bring actions to recover for preferential transfers — whether by exercising his powers of avoidance or by bringing a damages action in tort on behalf of all creditors. *Id.*

The foregoing discussion reveals why the *Caplin* concerns are not persuasive in the instant context. Unlike the causes of action at issue in *Caplin*, the Tenth Circuit interprets causes of

actions on behalf of all creditors for breach of fiduciary duty by a debtor corporation's insiders  to

be property of the estate under the current Bankruptcy Code and Colorado law.  *Delgado*, 785

F.2d at 861.  Secondarily, because the Tenth Circuit has held that *only* the trustee has the power

to bring suit on behalf of creditors regarding generalized complaints of preferential transfers, the

*Caplin* court's specter of inconsistent judgments is laid to rest here.  Thirdly, *Caplin*'s concerns

are less relevant in the context of the new Bankruptcy Code's expressed intent to promote

equality of distribution among similarly situated creditors.  *See* H.R.Rep. No. 595, 95th Cong.,

2nd Sess. 340, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6297; *Delgado Oil Co.*, 785 F.2d at 861.

Accordingly, I hold Trustee has the exclusive power to bring suit on behalf of similarly situated

creditors against third parties to recover for preferential transfers, whether by exercising his

avoidance powers or bringing actions in tort as allowed by state law.[4]  Trustee's amended

---

[4]This holding finds additional support in two of Judge Babcock's opinions concluding that pursuant to section 544(a), a trustee may bring certain tort claim against third parties on behalf of creditors.  *See In re Porter McLeod*, 231 B.R. at 792–93 (finding trustee had standing to pursue aiding and abetting breach of fiduciary duty claims against certain third parties on behalf of creditors); *Lifeblood Biomedical, Inc. v. Mann (In re Sender)*, 423 F. Supp. 2d 1155, 1173–74 (finding trustee had standing to pursue aiding and abetting breach of fiduciary duty and civil conspiracy claims against certain third parties on behalf of creditors); *see also Collins v. Kohlbert & Co. (In re S.W. Supermarkets, LLC)*, 325 B.R. 417, 425–26 (Bankr. D. Ariz. 2005) (noting that "some kinds of affirmative damages actions can be asserted under § 544(a)(2), not just avoidance of secret liens").

Similarly, although not binding on this court, the Colorado Supreme Court has recently held that trustees under section 544(a) not only have the power to avoid transfers and obligations of the debtor, but may also "bring claims that the debtor's creditors themselves could bring to satisfy judgments against the debtor under the applicable state law."  *Alexander v. Anstine*, 152 P.3d 497, 501–03 (Colo. 2007) (holding that under section 544[a], trustees may assert claims against debtor corporation's officers and directors for breach of a limited fiduciary duty to creditors).  The court cited for support *Zilka Energy Co. v. Leighton*, 920 F.2d 1520, 1523 (10th Cir. 1990), in which the Tenth Circuit held that pursuant section 544(a), "the trustee may invoke

complaint clearly alleges preferential transfers by insiders through their structuring of the Akamai

Transaction, Bridge Loans, DIP Loan, and Settlement Agreement.  (*See* Adversary P. Docket,

Docket No. 3 *passim* [Am. Compl.], Docket No. 101 at 13–16 [Order] [noting allegations and

evidence supporting a finding that the Akamai Transaction, Bridge Loans, DIP Loan, and

Settlement Agreement were undertaken, at least in part, for the benefit of certain of Debtor

corporation's insiders acting in their own self-interest].)  Accordingly, to the extent Trustee bases

his breach of fiduciary duty claims against GDC on alleged preferential transfers by Debtor

corporation's insiders and on behalf of all similarly situated creditors, he has exclusive standing to

assert the claims.[5]

---

*whatever* remedies provided by state law to judgment lien creditors to satisfy judgments against
the debtor."  *Zilkha Energy Co.*, 920 F.2d at 1523.

    [5]On August 31, 2007, GDC pointed this court's attention to a recent, unpublished opinion
from the southern district of Ohio, *The State Bank and Trust Co. v. Spaeth (In re Motowerks,
Inc.)*, No. 05–32116, 2007 Bankr. LEXIS 2332 (S.D. Ohio Bankr. July 13, 2007).  (Appellee
[GDC]'s Submission of Supplemental Authority [filed Aug. 31, 2007].)  In *In re Motowerks, Inc.*,
the court concluded — as some other circuits have — that *Caplin* mandates the conclusion that
"[section] 544(a) does not expand a trustee's abilities to bring actions beyond those seeking
avoidance of transfers of a debtor's property to third parties."  2007 Bankr. Lexis 2332, at *20.  I
find this decision unpersuasive.
    For the reasons I have already discussed, I do not agree that *Caplin* controls the instant
question.  Additionally, the court in *In re Motowerks, Inc.* did not consider the implications of
controlling Tenth Circuit precedent — namely, *Delgado*.  *See* 2007 Bankr. LEXIS 2332.  Had
this court been operating on a judicial stage without *Delgado*, it *may* have sided with those
circuits limiting a Trustee's powers under section 544(a) to avoidance.  Considering the current
stage, however, this court had no choice but conclude as it did.

### (2)    State Law

It is well established that a trustee's ability to exercise power under section 544(a)(1) is circumscribed by state law. *Zilkha Energy Co.*, 920 F.2d at 1524 (noting that trustee's remedies under section 544[a] are determined by state law). This means that even though, as I have just found, section 544(a) does not prohibit Trustee from bringing certain damages actions against third parties on behalf of creditors, Colorado state law must itself recognize Trustee's causes of action. Both Trustee's civil conspiracy and aiding and abetting claims rely on a preliminary presumption that certain insiders of Debtor corporation breached their fiduciary duties to the corporation's creditors. Thus, as an initial matter, for Trustee's claims to succeed, Colorado state law must establish a duty on the part of these insiders to the debtor corporation's creditors.

A case decided by the Colorado Supreme Court during the pendency of this is appeal is highly instructive on this point. In *Anstine*, the court considered a corporation's bankruptcy trustee's standing under section 544(a) to sue corporation attorneys for aiding and abetting the corporation's president in breaching his fiduciary duty to corporate creditors. 152 P.2d 497. As an initial matter, the court found that a judgment lien creditor does not have general standing to pursue all claims available to a debtor corporation before bankruptcy is declared. *Id.* at 502. Nonetheless, the court determined Colorado state law dictates that when a corporation becomes insolvent, the corporation's creditors are owed a common law duty by the directors and officers of the corporation. *Id.* The court was careful to note that this duty does not encompass a full set of fiduciary duties, but is, instead, "a limited duty that requires officers and directors to avoid favoring their own interests over creditors' claims." *Id.*

Trustee's aiding and abetting claim is focused on the conduct of GDC *vis-`a-vis* certain of Debtor's officers and directors. (Adversary P. Docket, Docket No. 3 ¶ 157 [Am. Compl.]) Trustee argues approval of preferential transfers that benefitted certain officers and directors to the detriment of Debtor's creditors is actionable under the Colorado Supreme Court's formulation. (Trustee's Br. at 15–17.) I agree.

The bankruptcy judge found:

> Viewing the record in the light most favorable to the Trustee . . ., the [c]ourt finds that there is a disputed issue of fact as to whether Blue Chip and Leach, the directors who became secured lenders of [Debtor], were acting in their own interests in structuring the loan transactions to benefit themselves.

(Adversary P. Docket, Docket No. 101 at 14 [Order].) Neither party contests this finding in the instant appeal. (*See* Trustee's Br.; Def.'s Resp.; Trustee's Reply.) Here, because Trustee alleged sufficient facts that, if true, may support a finding that Debtor's officers and directors favored their own interests over the corporation's creditors' claims, Trustee has properly pled a breach of duty under Colorado law.

Trustee's civil conspiracy claim fares somewhat differently, because it does not appears to be limited to a breach of duty by Debtor corporation's officers and directors. (*See* Adversary P. Docket, Docket No. 3 ¶¶ 151, 152 [Am. Compl.]) Specifically, Trustee contends: "The primary object of the civil conspiracy was to divert [Debtor's] assets from unsecured creditors or smaller shareholders to Blue Chip and the Leach Trust, Akamai, and other Bridge lenders and other insiders." (*Id.*, Docket No. 3 ¶ 152 [Am. Compl.].) Trustee has pointed to no Colorado law establishing that any parties other than officers and directors of an insolvent corporation owe a

duty to creditors.  (*See* Trustee's Br.; Trustee's Reply.)  In fact, in *Anstine*, the Colorado

Supreme Court stated that it has "never recognized a duty to creditors broader" than a "limited

duty that requires *officers and directors* to avoid favoring their own interests over creditors'

claims."  *Anstine*, 152 P.3d at 502 (emphasis added).  Thus, only to the extent that Trustee

identifies *officers and directors* of Debtor corporation as engaging in the alleged civil conspiracy

with GDC, has he sufficiently pled a breach of duty recognized by Colorado state law.[6]

Because, under Colorado law, a creditor may bring a claim against an officer or director of

a debtor corporation for breach of a limited fiduciary duty to that creditor, I see no bar to said

creditor bringing an aiding and abetting or civil conspiracy claim against the debtor corporation's

counsel for their assistance in the officer or director's breach.[7]  *See Sender v. Mann*, 423 F. Supp.

2d 1155, 1173–74 (D. Colo. 2006) (finding section 544 gave trustee standing to bring claim

against debtor's counsel for aiding and abetting breach of fiduciary duty to creditors); *accord In

re Porter McLeod*, 231 B.R. at 792–93; *see also Resolution Trust Corp. v. Heiserman*, 898 P.2d

1049, 1056 (Colo. 1995) (noting that "a breach of fiduciary duty is a tortious act which satisfies

the element of unlawful act associated with the definition of civil conspiracy"); *Holmes v. Young*,

885 P.2d 305, 308–09 (Colo. Ct. App. 1994) (recognizing state cause of action for aiding and

---

[6]Due to poor factual briefing by the parties, the court is unsure as to who exactly are the directors and officers of Debtor corporation, other than Leach, Blue Chip, Mr. Moody, and Mr. Ogden.  (*See* Trustee's Br.; Def.'s Resp.; Trustee's Reply.)

[7]The *Anstine* court left it an open question as to whether "an attorney can ever be liable for aiding and abetting a breach of fiduciary duty to a *non-client*."  152 P.3d at 503 (emphasis added).  *Anstine*, however, is poignantly distinguishable from the instant case, which alleges GDC assisted in a breach of fiduciary duty to its *client*.

-29-

abetting breach of fiduciary duty).  Thus, I find that, under Colorado state law, a judgment lien

creditor may bring a claim against Debtor corporation's attorney for aiding and abetting and/or

conspiring to breach the limited fiduciary duty an insolvent corporation's officers and directors

owe to such creditor.

### (3)    The Application of In Pari Delicto to Section 544(a) Claims

Trustee argues the *in pari delicto* doctrine does not apply to claims brought pursuant to

section 544(a) because, under this section, the trustee stands in the creditor's shoes rather than

the debtor's shoes, and is thus not subject to defenses that may be asserted against the debtor.

(Trustee's Br. at 17–23.)  The bankruptcy judge did not address this issue below, and GDC fails

to address it on appeal.  (*See* Adversary P. Docket, Docket No. 101 [Order]; Def.'s Resp.)  While

GDC points out that "when a [t]rustee stands in the shoes of the debtor under section 541, his

claims may be barred by the *in pari delicto* doctrine," it never argues that a trustee's claims

brought pursuant to section 544(a) may also be barred by the doctrine.  (*See* Def.'s Resp. at 13.)

Trustee presents a lengthy, well-supported argument for non-application of the doctrine.  (*See*

Trustee's Br. at 17–23.)  His argument that wrongdoing of the debtor is not imputed to the

trustee when acting in his capacity as a representative of creditors under section 544 was

explicitly adopted by Judge Babcock in *In re Porter McLeod*.  231 B.R. at 794; *accord Davis v.*

*Farmers Home Admin. (In re Davis)*, 785 F.2d 926, 927 (11th Cir. 1986) (finding that "[s]ince

the trustee's claims are for the benefit of the creditors, the fraud of the bankrupt does not require

them to be forfeited"); *Wedtech Corp. v. Nofziger (In re Wedtech Corp.)*, 88 B.R. 619, 622

(Bankr. S.D.N.Y. 1988) (holding "a trustee's ability to obtain a recovery for an estate and its

blameless creditors may not be denied by the pre-petition wrongful conduct of debtor"). In

choosing to ignore wholly Trustee's argument and supporting caselaw, I can only conclude that

GDC confesses it.[8]  Based on the foregoing, I find the bankruptcy judge erred as a matter of law

in dismissing Trustee's third and fourth claims to the extent they implicate the fiduciary duty of

Debtor corporation's officers and directors to a hypothetical judgment lien creditor.

**3.      Conclusion**

        Based on the foregoing, it is therefore ORDERED that the bankruptcy court's order is

REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

        Dated this 6th day of September, 2007.

                                                BY THE COURT:


                                                s/ Edward W. Nottingham
                                                EDWARD W. NOTTINGHAM
                                                Chief United States District Judge

---

        [8]This court recognizes that if the bankruptcy judge had made a determination regarding
the application of *in pari delicto* to section 544(a) claims, GDC's failure to respond to the
argument would be an insufficient basis to overturn the determination below. *See Hernandez v.
Starbuck*, 69 F.3d 1089, 1093–94 (10th Cir. 1995) (noting that when a party contends the district
court erred, the reviewing court has a duty to assess the validity of the appellant's arguments
regardless of appellee's failure to defend adequately the district court's decision). In the instant
case, however, the bankruptcy judge made no such determination. In essence, this court is the
one of first review for this question of law.